**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **THE ADVOCATES FOR HUMAN RIGHTS,** ) | |
| ) | |
| ) | |
| 330 Second Avenue South, #800 ) | |
| Minneapolis, MN 55401 ) | |
| ) | |
| *Plaintiff*, ) | |
| | |
| v. ) | |
| | |
| **TODD BLANCHE, IN HIS CAPACITY** ) | Civil Action No. _____ |
| **AS ACTING ATTORNEY GENERAL** ) | |
| **OF THE UNITED STATES** ) | |
| | |
| **DEPARTMENT OF JUSTICE,** ) | **COMPLAINT AND REQUEST FOR** |
| 950 Pennsylvania Avenue NW ) | **DECLARATORY RELIEF** |
| Washington, DC 20530 ) | |
| ) | |
| And ) | 5 U.S.C. § 706(2)(A) |
| ) | |
| **DAREN K. MARGOLIN, IN HIS** ) | |
| **CAPACITY AS DIRECTOR,** ) | |
| **EXECUTIVE OFFICE FOR** ) | |
| **IMMIGRATION REVIEW OF THE** ) | |
| **DEPARTMENT OF JUSTICE,** ) | |
| 5107 Leesburg Pike ) | |
| Falls Church, VA 22041 ) | |
| ) | |
| *Defendants*. ) | |
| ) | |
| ) | |
| ) | |
| ) | |
| ) | |
| ) | |
| ) | |
| ) | |
| ) | |
| ) | |
| ) | |
| ) | |
| ) | |
| ) | |
| ) | |
| ) | |
| ) | |
| ) | |
| ) | |

**COMPLAINT**

**INTRODUCTION**

1.      Plaintiff The Advocates for Human Rights ("Plaintiff" or "AHR") brings this action against Todd Blanche, in his official capacity as the Acting Attorney General of the United States, United States Department of Justice ("USDOJ" or "DOJ"), and Daren K. Margolin, in his capacity as Director, Executive Office for Immigration Review, the United States Department of Justice ("EOIR") (collectively referred to as "Defendants") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Administrative Procedure Act ("APA"), 5 US.C. § 551, *et seq*., challenging EOIR's arbitrary and capricious denial of AHR's request for expedited processing of a FOIA request submitted to EOIR on May 1, 2026.

2.      As background, AHR has implemented a project through which AHR volunteers and staff have observed and documented removal and bond proceedings at the Fort Snelling Immigration Court in the State of Minnesota since 2017. This court observation project of AHR draws on the well-established international human rights practice of monitoring legal proceedings to identify, bring visibility to, and end human rights violations arising in the context of civil immigration enforcement. The project brings observers into the Fort Snelling Immigration Court to observe and document hearings, including hearings for those facing removal while in Immigration and Customs Enforcement ("ICE") detention. Since starting the Immigration Court Observation Project, staff and volunteers of The Advocates have regularly observed hearings on the detained, non-detained, families and children, and Institutional Hearing Program ("IHP") dockets.

3.      On March 12, 2026, AHR filed a complaint against Pamela Bondi, in her official capacity as the Attorney General of the United States, USDOJ; Daren K. Margolin, in his capacity as Director, EOIR, USDOJ; Teresa L. Riley, in her capacity as the Chief Immigration Judge of the Office of Chief Immigration Judge ("OCIJ"); and Hon. Eric L. Dillow, in his

capacity as Assistant Chief Immigration Judge, United States Immigration Court at Fort Snelling in the State of Minnesota (Fort Snelling), alleging the access restrictions at the Fort Snelling Immigration Court are (a) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, (b) without observance of procedure required by law, and (c) contrary to constitutional right under the Administrative Procedure Act, with the access restrictions violating the First Amendment rights of AHR and its courtroom observers. See *The Advocates for Human Rights v. Bondi*, Case No. 1:26-cv-00865 (D.D.C. filed Mar. 12, 2026).

4.      On May 1, 2026, AHR, through its counsel, submitted a detailed, narrowly tailored FOIA request to EOIR seeking records relating to public and press access to immigration court proceedings both in-person and via Webex across the country, including at the Fort Snelling Immigration Court located in the Bishop Henry Whipple Federal Building at Fort Snelling, Minnesota. AHR sought expedited processing of its request under 28 C.F.R. § 16.5(e)(1)(ii) and (iv), explaining that it is a not-for-profit organization primarily engaged in human rights advocacy and disseminating information to the public, that the information sought is urgently needed to inform the public concerning actual and alleged federal government activity restricting access to presumptively open immigration court proceedings, and that the subject of the request is a matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence. The issue of denial of access to immigration court proceedings has garnered media attention and the attention of organizations that engage in immigration court observation.

5.      On May 4, 2026, EOIR denied AHR's request for expedited processing. EOIR's denial was boilerplate and conclusory, stating only that "[u]pon review of your request, it has been determined that you did not meet the threshold" and providing no substantive reasoning, no engagement with the specific grounds AHR had articulated, and no explanation for why AHR's showing was purportedly insufficient. This brief denial, issued one business day after

3

AHR's detailed submission, is arbitrary and capricious within the meaning of 5 U.S.C. § 706(2)(A) and violates the FOIA's expedited processing provisions, 5 U.S.C. § 552(a)(6)(E).

6. AHR now seeks a declaration that EOIR's denial of expedited processing was unlawful.

7. For its causes of action, Plaintiff states and alleges as follows:

## JURISDICTION AND VENUE

8. Plaintiff incorporates the allegations of paragraphs 1 through 7 as if fully set forth in this Section.

9. This action arises under the Freedom of Information Act, 5 U.S.C. § 552, and its implementing regulations, and the Administrative Procedure Act ("APA"), 5 US.C. § 551, *et seq*.

10. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1346, and 2201(a).

11. Declaratory relief is sought consistent with 5 U.S.C. § 706, and as authorized in 28 U.S.C. § 2201.

12. The Court has jurisdiction to review EOIR's denial of AHR's request for expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E)(iii), which expressly provides that a district court may order an agency to grant expedited processing upon a showing that the agency's denial was improper. Section 552(a)(6)(E)(iii) subjects agency denials of expedited processing to judicial review under 5 U.S.C. § 552(a)(4) without requiring administrative exhaustion of any appeal. A requester whose application for expedited processing has been denied need not administratively appeal the denial before seeking judicial review. See *Al-Fayed v. CIA*, 254 F.3d 300, 306 (D.C. Cir. 2001) (recognizing that courts review denials of expedited processing *de novo*).

4

13.     The Court's jurisdiction to review the denial of expedited processing is subject to a temporal limitation. Under 5 U.S.C. § 552(a)(6)(E)(iv), the Court loses jurisdiction to review the denial of expedited processing once EOIR provides a "complete response" to the underlying FOIA request. EOIR has not yet provided any substantive response to AHR's FOIA request, much less a "complete" one. Accordingly, the Court retains jurisdiction.

14.     Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B).

## PARTIES

15.     Plaintiff incorporates the allegations of paragraphs 1 through 14 as if fully set forth in this Section.

16.     AHR is a non-profit organization headquartered in Minneapolis, Minnesota. AHR is primarily engaged in human rights advocacy and the dissemination of information to the public concerning human rights issues, including issues arising in the context of civil immigration enforcement in the United States. AHR also regularly monitors the operation of the U.S. Immigration Court located in the Bishop Henry Whipple Federal Building located at Fort Snelling in the State of Minnesota. AHR is also interested in observing, monitoring, and disseminating to the public information about immigration court hearings held elsewhere in the United States.

17.     AHR disseminates information to the public through reports, publications, its website, and other channels, and regularly provides information to the press and the public about matters of public concern, including matters relating to immigration policy and the administration of the immigration courts.

18.     Defendant EOIR is a component of the DOJ, which is currently led by Defendant Todd Blanche, the Acting Attorney General of the United States. Under delegated authority from the Attorney General, EOIR conducts immigration court proceedings, appellate reviews, and administrative hearings. EOIR is headquartered at 5107 Leesburg Pike, Falls

Church, VA 22041. The DOJ is located at 950 Pennsylvania Avenue NW, Washington, DC 20530.

19.    EOIR is an "agency" within the meaning of 5 U.S.C. § 552(f)(1).

## STATEMENT OF FACTS

### AHR's Longstanding Monitoring of the Immigration Courts

20.    Plaintiff incorporates the allegations of paragraphs 1 through 19 as if fully set forth in this Section.

21.    Until 2025, AHR's observers at the Fort Snelling Immigration Court enjoyed access to hearings consistent with the standards set forth in 8 C.F.R. § 1003.27 and with policy guidance posted on the EOIR website, both of which make clear that immigration court hearings are generally open to the public, subject only to limited exceptions, as specified by law.

22.    Since early 2025, however, the Fort Snelling Immigration Court has, at times, limited or completely blocked public access to hearings, both in-person and by Webex, without prior notice to the public and without providing any explanation for the changes in the court's access policies. These restrictions on public access to immigration court proceedings have not been limited to the Fort Snelling Immigration Court. EOIR's November 2025 Fact Sheet stated that "[v]isitors should observe in person at the courtroom in which the hearing is scheduled and held," and that "[t]he Webex links posted on EOIR's website are for parties appearing remotely," a limitation that immigration court judges have used to block remote access to court observers across the country but which violates 8 C.F.R. § 1003.27 (and a related regulation, 8 C.F.R. § 1240.10(b), which references 8 C.F.R. § 1003.27), the APA, and the U.S. Constitution's First Amendment.

23.    On March 12, 2026, AHR filed suit in this Court challenging the restrictions on public access to the Fort Snelling Immigration Court as arbitrary, capricious, and contrary to

law under the APA and as violative of 8 C.F.R. 1003.27 and AHR's First Amendment rights. See *The Advocates for Human Rights v. Bondi*, Case No. 1:26-cv-00865 (D.D.C. filed Mar. 12, 2026).

### AHR's FOIA Request

24.     On May 1, 2026, AHR, through its counsel, submitted a detailed, narrowly tailored FOIA request to EOIR seeking records in forty-eight categories relating to public and press access to immigration court proceedings. Exhibit 1. Unless otherwise stated in the FOIA request,[1] all requests were for documents, communications, and records from January 20, 2025, to the present, and pertained to all immigration courts across the country and EOIR broadly. Exhibit 1.

25.     Among other categories, AHR's FOIA request sought: emails, memoranda, letters, directives, policies, or other documents or communications discussing or relating to public or press access to immigration court proceedings created by, received by, or sent by EOIR; notices posted on or at immigration courtrooms that offered or purported to offer a reason for closing an immigration court matter or restricting access thereto; documents or communications describing or lodging complaints about denials or restrictions of access to immigration court proceedings; documents relating to EOIR's compliance with or failures to comply with 8 C.F.R. § 1003.27, the federal regulation governing public access to immigration court proceedings; motions by government attorneys or respondents' attorneys requesting that immigration court proceedings be closed; transcripts or other communications from immigration judges concerning decisions to close immigration court proceedings; statistics regarding bond denial rates and asylum denial rates; and documents relevant or related to the allegations of AHR's pending lawsuit. Exhibit 1.

---

[1] AHR notes that only one request sought information regarding a period before January 20, 2025: Request 43 requested information as far back as November 2024. Exhibit 1, p. 6.

**AHR's Request for Expedited Processing**

26.    In its FOIA request, AHR sought expedited processing under two independent regulatory bases set forth in 28 C.F.R. § 16.5(e)(1). Exhibit 1, p. 1.

27.    First, AHR sought expedited processing under 28 C.F.R. § 16.5(e)(1)(ii), which provides for expedited processing where there is "[a]n urgency to inform the public about an actual or alleged Federal Government activity" and the request is made by a person or organization "primarily engaged in disseminating information." AHR stated that it is a not-for-profit organization primarily engaged in human rights advocacy and disseminating information to the public, and that the information it seeks is urgently needed to inform the public whether EOIR proceedings, as required by law (with only limited exceptions), have been open to the public and the press since early 2025. Exhibit 1, p. 1. AHR explained that this information is urgent because it relates to constitutional rights, including First Amendment rights, the due process rights of respondents in EOIR proceedings, and the ability of a respondent to have an open hearing. *Id.*

28.    Second, AHR sought expedited processing under 28 C.F.R. § 16.5(e)(1)(iv), which provides for expedited processing where the request involves "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence." AHR stated that EOIR's immigration proceedings, including proceedings at the Bishop Henry Whipple Federal Building at Fort Snelling, Minnesota, are matters of widespread and exceptional media interest and involve questions about the government's policy and procedure in implementing its immigration policies and in closing or restricting access to presumptively open hearings. Exhibit 1, p. 1. The issue of public access to immigration court hearings and the unlawful and improper denial of such access is, in fact, an issue of national importance.

8

29.     Pursuant to 28 C.F.R. § 16.5(e)(3), AHR certified under the applicable regulation that the reasons provided to support its request for expedited processing are true and correct. Exhibit 1, p. 1.

### Media Coverage of Immigration Court Access Restrictions

30.     AHR's FOIA request concerns a matter of intense and ongoing media interest. As reflected in AHR's March 2026 complaint in this Court, numerous media reports have documented the restrictions on public access to immigration court proceedings. For example, the Sahan Journal reported that "Fort Snelling Immigration Court has increasingly denied access to court observers, mirroring trends across the country," and that while AHR's observers "have been a constant presence in courtrooms," "a change occurred" in October 2025, with clerks telling "court observers and others that hearings were closed, and doors to publicly available courtrooms were locked." *See, e.g.*, Nicolas Scibelli, *Court Observers Blocked: Immigration Hearings Face New Restrictions Across the U.S.*, Sahan Journal (Dec. 10, 2025), https://sahanjournal.com/immigration/fort-snelling-immigration-court-access-shrinks/.     The *New York Times* reported on the high-profile case of five-year-old Liam Conejo Ramos, whose removal hearing was "held virtually and closed to the public." *E.g.*, Jazmine Ulloa, *U.S. Seeks to Expedite Deportation of 5-Year-Old Liam Conejo Ramos*, N.Y. Times (Feb. 6, 2026). The Acacia Center for Justice also issued a report documenting restrictions on public access undermining transparency in immigration courts. Acacia Center for Justice, *Restrictions on Public Access Undermine Transparency in Immigration Courts* (Dec. 2025), https://acaciajustice.org/why-public-access-to-immigration-courts-matters-more-than-ever/.

31.     In AHR's request for expedited processing, AHR cited widespread and exceptional media interest. This referenced media interest has continued unabated since AHR brought the issue of unlawful closures of immigration court hearings to the attention of the DOJ/EOIR and filed its March 12, 2026 lawsuit against DOJ and EOIR officials in their official

9

capacities. For example, in March 2026, the *Chicago Tribune* reported that "court watchers trying to observe on [Webex] increasingly have found themselves shut out of [immigration court] hearings." *See, e.g.,* Caroline Kubzansky, *Immigration Court Observers – And Their Oversight – Routinely Locked Out of Process,* The Chicago Tribune (Mar. 30, 2026). And, the Georgia Asylum and Immigration Network ("GAIN") reported that "[o]ver the past few weeks, Court Watch volunteers have reported being denied entry to virtual immigration bond hearings or being removed after joining." Georgia Asylum and Immigration Network, *GAIN's Court Watch Data Suggests Judges Arbitrarily Denying Immigrant Bond*, Mar. 25, 2026, https://georgiaasylum.org/2026/03/25/court-watch-data-suggests-judges-arbitrarily-denying-immigrant-bond/.

32.    Multiple media companies filed amici briefs in *The Advocates for Human Rights v. Bondi*, Case No. 1:26-cv-00865 (D.D.C. filed Mar. 12, 2026), including Reporters Without Borders, Inc. and Dow Jones, The Guardian, Minnesota Public Radio, Minnesota Reformer, MinnPost, ProPublica, Sahan Journal, Star Tribune, The New York Times, and The Washington Post; further underscoring the media's continued widespread and exceptional interest in this subject matter.

33.    The Bishop Henry Whipple Federal Building, where the Fort Snelling Immigration Court is located, has itself been a subject of significant public attention and media coverage, further underscoring the public urgency of the records AHR seeks.

## EOIR's Denial of Expedited Processing

34.    On May 4, 2026, a mere three days – and just one business day – after AHR submitted its detailed, narrowly tailored FOIA request, EOIR denied AHR's request for expedited processing via email.

35.    EOIR's denial stated, in its entirety as to the substantive determination: "The FOIA regulations states that expedited treatment is granted if there is an exceptional need such

as jeopardy to life or personal safety, a threatened loss of substantial due process rights, or an urgency to inform the public concerning actual or alleged Federal Government activities. See 28 C.F.R. § 16.5(e). Upon review of your request, it has been determined that you did not meet the threshold. Therefore, your request for expedited treatment has been denied." Exhibit 2.

36.     EOIR's denial was boilerplate and conclusory. It recited generic regulatory language but did not address any of the specific grounds AHR had articulated in support of its request. EOIR did not address AHR's showing under 28 C.F.R. § 16.5(e)(1)(ii) that there is an urgency to inform the public about actual federal government activity restricting access to presumptively open immigration proceedings. EOIR did not address AHR's showing under 28 C.F.R. § 16.5(e)(1)(iv) that the subject matter involves a matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence. EOIR offered no substantive reasoning whatsoever for its determination that AHR "did not meet the threshold." "Stating that a factor was considered ... is not a substitute for considering it." *Getty v. Fed. Savs. & Loan Ins. Corp.*, 805 F.2d 1050, 1055 (D.C. Cir. 1986).

37.     The denial did not acknowledge AHR's status as a non-profit organization primarily engaged in disseminating information to the public, did not address the media coverage AHR cited, did not engage with AHR's detailed explanation of the public urgency of the records sought, and did not explain which prong (or prongs) of the regulatory standard AHR purportedly failed to satisfy, much less why.

## LEGAL STANDARD

38.     Plaintiff incorporates the allegations of paragraphs 1 through 37 as if fully set forth in this Section.

39.     FOIA provides that agencies must promulgate regulations providing for expedited processing of requests for records "in cases in which the person requesting the

11

records demonstrates a compelling need" and "in other cases determined by the agency." 5 U.S.C. § 552(a)(6)(E)(i).

40.    DOJ's implementing regulations provide for expedited processing in circumstances including where there is "[a]n urgency to inform the public about an actual or alleged Federal Government activity" and the request is made by "a person primarily engaged in disseminating information," 28 C.F.R. § 16.5(e)(1)(ii), and where the request involves "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence," 28 C.F.R. § 16.5(e)(1)(iv).

41.    The Court reviews the agency's denial of expedited processing *de novo*, based on the record before the agency at the time of the determination. 5 U.S.C. § 552(a)(6)(E)(iii); *ACLU v. U.S. DOJ*, 321 F. Supp. 2d 24, 29 (D.D.C. 2004).

42.    In *ACLU v. U.S. DOJ*, 321 F. Supp. 2d 24, 27–29 (D.D.C. 2004), the Court found a compelling need for expedited processing demonstrated under both the "urgency to inform the public" prong and the "widespread and exceptional media interest" prong where the plaintiff provided examples of public urgency and contemporaneous media attention regarding government activity. The court noted that the agency cannot deny expedited processing without justification. *Id.* at 33.

43.    In *Al-Fayed v. CIA*, 254 F.3d 300, 310 (D.C. Cir. 2001), the D.C. Circuit narrowly construed the "compelling need" standard and affirmed a denial of expedited processing where the records sought concerned events that had occurred two to three years prior and the requester failed to demonstrate current urgency. That case is readily distinguishable from the instant action. AHR's request does not concern stale or historical events. Rather, it concerns current, ongoing federal government activity—the closure of and restrictions on access to presumptively open immigration court proceedings that have been taking place since early 2025 and continue to the present day—with documented

contemporaneous media attention, including coverage of the specific immigration court at the Bishop Henry Whipple Federal Building that is one of the subjects of AHR's FOIA request.

## COUNT I

### Violation of FOIA and the APA: Arbitrary and Capricious Denial of Expedited Processing

44. Plaintiff incorporates the allegations of paragraphs 1 through 43 as if fully set forth in Count I.

45. On May 1, 2026, AHR submitted a FOIA request to EOIR and sought expedited processing of that request under 28 C.F.R. § 16.5(e)(1)(ii) and (iv).

46. AHR's request for expedited processing was supported by a detailed showing that (a) AHR is a non-profit organization primarily engaged in disseminating information to the public; (b) there is an urgency to inform the public concerning actual federal government activity: EOIR's closure of and restrictions on access to presumptively open immigration court proceedings in apparent violation of 8 C.F.R. § 1003.27 and the First Amendment; and (c) the records sought pertain to a matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence.

47. AHR satisfied both regulatory bases for expedited processing that it invoked. As to the first basis, 28 C.F.R. § 16.5(e)(1)(ii), AHR demonstrated that it is primarily engaged in disseminating information and that there is an urgency to inform the public about actual federal government activity. The records AHR seeks relate to ongoing, current government activity—restrictions on public access to immigration court proceedings that implicate important federal regulations (i.e., 8 C.F.R. § 1003.27 and 8 C.F.R. § 1240.10(b)) ensuring public and press access to immigration court matters, and federal constitutional rights, including First Amendment rights and the due process rights of respondents. The urgency is not speculative or generalized; it concerns documented, specific instances of courtroom

13

closures and access restrictions that have been occurring since early 2025 and that continue to the present.

48.    As to the second basis, 28 C.F.R. § 16.5(e)(1)(iv), AHR demonstrated that its request concerns a matter of widespread and exceptional media interest. The referenced media coverage raises serious questions about the government's integrity—specifically, whether EOIR is complying with its own regulations that require immigration court hearings to be open to the public, and whether the government is affording respondents and the public the transparency to which they are entitled by law.

49.    As required by 28 C.F.R. § 16.5(e)(3), AHR certified its statement regarding expedited processing is true and correct.

50.    On May 4, 2026, EOIR denied AHR's request for expedited processing.

51.    EOIR's denial was boilerplate and failed to address any of the specific grounds AHR had articulated. The denial recited generic regulatory language, stated without explanation that AHR "did not meet the threshold," and provided no substantive reasoning for its determination.

52.    EOIR's denial of AHR's request for expedited processing violated the FOIA, 5 U.S.C. § 552(a)(6)(E), and the DOJ's FOIA implementing regulations at 28 C.F.R. § 16.5(e), and was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law within the meaning of the APA, 5 U.S.C. § 706(2)(A).

53.    The denial was arbitrary and capricious because EOIR failed to engage with AHR's specific showing of compelling need, failed to articulate any reason for concluding that AHR had not satisfied the applicable regulatory standards, and issued a rote, boilerplate response that was not the product of reasoned decisionmaking. *See, e.g. Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 103 S. Ct. 2856, 77 L. Ed. 2d 443 (1983); *Getty v. Fed. Savs. & Loan Ins. Corp.*, 805 F.2d

1050, 1055 (D.C. Cir. 1986) ("Stating that a factor was considered ... is not a substitute for considering it."); *Sierra Club v. Salazar*, 177 F. Supp. 3d 512, 537 (D.D.C. 2016).

54.    The Court reviews EOIR's denial of expedited processing *de novo* based on the record before the agency at the time of the determination. 5 U.S.C. § 552(a)(6)(E)(iii); *ACLU v. U.S. DOJ*, 321 F. Supp. 2d 24, 29 (D.D.C. 2004). On *de novo* review, AHR's submission demonstrates a compelling need for expedited processing under both 28 C.F.R. § 16.5(e)(1)(ii) and (iv). See *id.* at 27–29 (finding compelling need demonstrated under both prongs where requester provided examples of public urgency and media attention).

55.    Unlike in *Al-Fayed v. CIA*, 254 F.3d 300, 310 (D.C. Cir. 2001), where the D.C. Circuit affirmed a denial of expedited processing for records concerning events that had occurred two to three years prior, AHR's request concerns current, ongoing government activity. The restrictions on public access to immigration court proceedings have been occurring since early 2025 and continue to the present. The contemporaneous media attention is extensive and documented. The public interest in the records is immediate, not retrospective.

56.    AHR is therefore entitled to a declaration that Defendants have violated the Administrative Procedure Act by EOIR's arbitrary and capricious boilerplate denial of AHR's request for expedited treatment for its May 1, 2026 FOIA request.

## PRAYER FOR RELIEF

For the above reasons, AHR respectfully requests that this Court:

A.  Declare that EOIR's denial of AHR's request for expedited processing of its May 1, 2026 FOIA request was unlawful, arbitrary, capricious, and not in accordance with law;

B.  Order EOIR to grant AHR's request for expedited processing and to process the records requested in AHR's May 1, 2026 FOIA request on an expedited basis;

C.  Award AHR its costs and reasonable attorneys' fees pursuant to 5 U.S.C. § 552(a)(4)(E); and

15

D.  Grant such other relief as the Court deems just and equitable.

Dated: May 29, 2026

Respectfully submitted,

STINSON LLP

*/s/ Harvey Reiter*
Harvey Reiter, No. 232942
Katie Parnow, No. 90041785
1775 Pennsylvania Ave, N.W., Suite 800
Washington, DC 20006
Tel. (202) 728-3016
harvey.reiter@stinson.com
katie.parnow@stinson.com

Betsy Moedritzer, *pro hac vice* admission
pending
1201 Walnut St., Suite 2900
Kansas City, MO 64106
Tel. (816) 691-3383
betsy.moedritzer@stinson.com